### TOWER v. EAGLE PENCIL CO.

(Circuit Court of Appeals, Second Circuit. April 4, 1899.)

No. 132.

PATENTS—VALIDITY AND INFRINGEMENT.

 The Tower patent, No. 378,223, for a penholder with a layer of cork, called a "sleeve," at its lower end, to form a cushion (supposed to be anti-nervous), construed, and *held* not infringed.

Appeal from the Circuit Court of the United States for the Southern District of New York.

This was a suit in equity by Levi L. Tower against the Eagle Pencil Company for alleged infringement of a patent for an improved pen-

holder. The circuit court held that the patent was valid and infringed, and accordingly entered a decree for the complainant. 90 Fed. 662. From this decree the defendant has appealed.

Marcellus Bailey, for appellant.
W. S. Logan, for appellee.

Before WALLACE, LACOMBE, and SHIPMAN, Circuit Judges.

WALLACE, Circuit Judge. Error is assigned upon this appeal of the decree of the court below adjudging the validity, and the infringement by the defendant, of letters patent No. 378,223, dated February 21, 1888, granted to Levi L. Tower for a penholder.

The invention described and claimed in the patent consists in the means whereby the ordinary penholder is provided at the pen end with a layer of cork, called a "sleeve"; the object being to form a cushion (supposed to be antinervous) for the part held by the fingers and thumb in writing. Cork and various antinervous materials had been used for penholders; and the materials, except cork, had been used in the form of a thin sleeve upon the penholder to form a cushion for the fingers. The penholder of the British patent to Welch, of 1857, was of wood, surrounded by a metal tube at the pen end, and having a sleeve of rubber, velvet, leather, cloth, "or any other soft and flexible material," as the cushion. The penholder of the patent to Rodrigue was of wood, and had a rubber sleeve at the pen end for the cushion, which surrounded the tenon, and formed a square joint with the body of the holder at the shoulder of the tenon. As no tenon was used in the Welch penholder, the sleeve projected beyond the line of the rest of the penholder; making the holder thicker at the pen end than above. The Rodrigue sleeve did not project, but was on a line with the rest of the penholder, because he placed his sleeve directly upon the tenon, without interposing the metal reenforce tube of Welch. Cork being a more fragile material than rubber, leather, or other antinervous cushions, Tower, the patentee of the present invention, thought it desirable not only to use a re-enforce tube, but also to protect his sleeve from abrasion at both its lower and upper ends. He constructed his penholder like that of Rodrigue, substituting cork for rubber, interposing the re-enforce tube, and introducing special means for protecting the sleeve at each end. The means he adopted for doing this were modifications of those of Welch and Rodrigue. He employed the metal tube of Welch, and the tenon of Rodrigue, and surrounded the tube with a cork sleeve, as Welch had done with a velvet or leather sleeve; but he made his tube with projections at the pen end, and at the other end, instead of using the shoulder of Rodrigue, he made a peculiar joint, by making an annular recess in the shoulder, and forming his sleeve to correspond. He also used a slotted tenon, but this feature was not new, and does not enter into the invention claimed. The means of housing the cork sleeve, and protecting it from abrasion at the ends, are described in the specification as follows:

"A represents the main or body portion of the holder, constructed of wood or other desired material, and provided at the lower end with a round tenon,

B, having a longitudinal slit, C, and an annular groove or short conical socket, D, formed in the body portion, A, at the intersection of the said tenon, B, with the body, A, as shown. Now, I provide this tenon, B, with a sleeve, E, formed of cork, having its upper end, F, conical, and fitted into the annular conical groove, D, whereby the thin, edge-like portion of the cork at this end of the sleeve is protected by the harder covering portion of wood forming such joint, as shown in Fig. 2. In order that the sleeve, E, of cork, may be pro-

tected from abrasion when inserting the pen, P, in position in the holder, I provide a metal re-enforcement tube, H, which fits snugly upon the slotted tenon, B, and within the longitudinal opening formed through the said cork sleeve, E, and has its lower end portion formed into a series of radial points, L, which are turned outward over and upon the lower end of the cork sleeve, whereby the rigidity of the pen is secured within the cork sleeve, and the liability of its being broken is greatly diminished, as it is protected by the points, L."

The patentee then inserts in his specification the following disclaimer:

"I do not claim cork, or any other material, but limit my invention to the novel construction of the thin cork sleeve, re-enforced with a metal tube, and protected from abrasion at the ends, as set forth."

The claim is as follows:

"A penholder consisting of the body portion, A, provided with a tenon, B, having an annular socket or groove, D, provided with a cork sleeve, E, one

end of which is fitted within the said groove, and its opposite end portion provided with a re-enforce metal tube, H, having a series of points, L, which contact with the end of the said sleeve, as shown; all being constructed and arranged substantially as described."

We agree with the court below that while the mere substitution of cork for rubber, leather, velvet, or other "antinervous" material, would not, in view of the prior use of cork for penholders, be sufficient to support the patent, there was patentable novelty in the means devised to strengthen and protect the new material so as to adapt it to practical and satisfactory use as a cushion. It required but slight modifications of existing penholders to devise these means, yet we cannot say that they were obvious changes, which could have been supplied without the exercise of any inventive thought.

We cannot agree with the court below that the penholder of the defendant is an infringement of the patent. It would be if it did not dispense with the peculiar joint between the sleeve and the body of the holder, which, by the specification and the terms of the claim, must be regarded as an essential feature of the patented invention. While the defendant's penholder does not have the series of radial points (forming practically a shoulder) at the lower end of the metal tube, it has a projecting flange or shoulder at that place which protects the sleeve from abrasion. In both, the devices perform the same office in the same way, and thus in every sense one is an equivalent for the other. The two penholders are differentiated, however, by the different means for housing and protecting the sleeve at its upper end. The means pointed out in the specification are an annular groove or short conical socket in the body of the penholder at the intersection of the tenon, and a sleeve conical at the end, and fitted into the annular groove so as to be covered and protected by the overlapping wood, thus forming a recessed joint. Instead of the joint of the patent, the penholder of the defendant has the square or unrecessed joint of the Rodrigue patent. This end of the sleeve is not, as in the penholder of the patent, "protected by the hard covering portion of wood forming such a joint." If this is a disadvantage, to that extent the defendant has not profited by the patented invention; but by dispensing with the joint the penholder can be produced at less expense, and to this extent the defendant obtains a countervailing advantage. The patent is limited, by the express terms of the claim, as well as by the description in the specification, to a penholder which embodies this special detail of construction. To infringe the claim the body portion of the penholder must contain "the annular socket or groove, D," and a sleeve, "one end of which is fitted within the said groove." The defendant's penholder contains neither. If it be said that the square joint in the defendant's penholder protects the upper end of the shield as efficiently as does the recessed joint of the patented penholder, the reply is that it was open to both the patentee and the defendant to adopt this form of joint. The patentee might have availed himself of the Rodrigue joint, but obviously supposed that it would not suffice. The defendant concluded that it would, and, if he gained any advantages by adopting it, he is entitled to hold

them. The narrow boundaries of the invention preclude a construction of the claim not strictly warranted by its terms.

The decree is reversed, with costs, and with instructions to dismiss the bill.